**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JEAN B. GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-11-1613 |
| BOBBY P. SHEARIN, *et al.* | * | |
| Defendants | * | |

***

**MEMORANDUM**

Pending is defendants' motion to dismiss or for summary judgment. ECF No. 12. Plaintiff opposes the motion.[1] ECF No. 17. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

**Background**

The instant case has its roots in a prior case which was decided by this court on November 19, 2009. *See Germain v. Shearin*, Civil Action JFM-09-3097 (D. Md. 2010), *affirmed on appeal Germain v. Shearin*, No. 10-7722 (4th Cir. May 23, 2011). In that case plaintiff claimed, as he does here, that he was entitled to assignment to a single cell because of anxiety which was due in part to a previous assault by a cellmate.[2] In granting summary judgment in favor of defendants in that case, this court relied on an affidavit presented by Dr. Holwager, the psychologist treating plaintiff at the time, who stated in part that plaintiff suffers

[1] Also pending is plaintiff's motion for extension of time to file an opposition to defendants' dispositive motion. ECF No. 14. Plaintiff's motion shall be granted.

[2] Plaintiff claimed he was sexually assaulted by another inmate on August 1, 1998, when he was confined to Jessup Correctional Institution (JCI). He claimed that when the unwanted sexual contact began he stabbed his assailant with a knife 104 times resulting in his later conviction of attempted second-degree murder and a transfer to Maryland Correctional Adjustment Center. Plaintiff remained there until 2003 when he was returned to JCI and evaluated by the chief psychologist, who recommended assignment to a single cell. The recommendation was approved and plaintiff remained assigned to a single cell until October 30, 2008, when he was transferred to North Branch Correctional Institution (NBCI). *See Germain*, Civil. Action JFM-09-3097 at ECF No. 16.

from an anxiety disorder but it is not severe enough to require assignment to a single cell "as determined by the NBCI single cell committee." *Id.* at ECF No. 16. Defendants also related that despite the fact that he did not qualify for a single cell, plaintiff was given a single cell for a period of three months and would be re-evaluated thereafter.

In the instant case plaintiff alleges that shortly after the Fourth Circuit Court of Appeals affirmed this court's decision he was moved into a double cell. ECF No. 1 and 3. Specifically, he claims that defendants Lt. Harbaough, Sgt. J. Smith, Sgt. McAlpine, and Ms. Booth-Moulden, who are correctional employees assigned to work on disciplinary segregation at NBCI, retaliated against him for the prior lawsuit and for the approximately 30 administrative complaints he filed challenging the policies of the disciplinary segregation unit. ECF No. 3 at p. 4. On May 31, 2011, approximately one week after the Fourth Circuit's decision, plaintiff was informed he would be moving into a double cell. ECF No. 1 at p. 2. When plaintiff expressed his fear of being put into a cell with another inmate, he claims he was punished by being put into a "contingency cell" where he tried to kill himself. Plaintiff claims that Sgt. Smith put him into the contingency cell even though Chief Psychologist Bruce Liller advised against putting him into the cell. He claims he was told he would remain in the contingency cell until he accepted a cellmate. *Id.* at p. 3.

Plaintiff describes the conditions in the contingency cell as filthy. He claims the toilet was not operational and was filled with feces and urine. ECF No. 17. The cell did not have a bunk in it, requiring plaintiff to sleep on the floor where insects were crawling. *Id.* He states there is no fresh air available because the window cannot be opened and that he was deprived of food and ice while confined there. ECF No. 1. He states he was deprived of his medical diet; and denied access to his personal property, hygiene items and legal papers. In addition, plaintiff

states he was unable to send or receive mail. *Id*. Thus, plaintiff asserts three claims. First, that defendants have been deliberately indifferent to his need for psychological treatment by refusing to assign him to a single cell which has exacerbated his anxiety disorder. Second, defendants retaliated against him for exercising constitutionally protected rights. Third, he claims he was subject to conditions of confinement that violate the Eighth Amendment while confined to the contingency cell.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp*. *v*. *Catrett*, 477 U.S. 317, 323-24 (1986)).

In the instant case plaintiff seeks injunctive relief requiring defendants to permanently assign him to a single cell. "[T]o survive summary judgment, [plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

**Analysis**

Deliberate Indifference to Psychological Needs

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but

failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48.

Defendants assert that plaintiff was never promised permanent single cell assignment and that he was not placed in the contingency cell against the advice of Mr. Liller. ECF No. 12. They admit, however, that plaintiff suffers anxiety regarding being placed in a cell with another inmate.[3] Following plaintiff's suicide attempt on May 31, 2011, he was interviewed the next day by Liller. ECF No. 12 at Ex. 7. Liller noted that there was no evidence of pervasive mental disorders present, and on June 9, 2011, recommended that plaintiff be placed in a single cell for a period of ninety days. *Id.* On June 12, 2011, plaintiff was moved to the disciplinary segregation housing unit as a single cell status inmate. Liller maintains that at the end of the ninety day period[4] plaintiff will be evaluated to ascertain if the single cell status is still necessary. *Id.*

[3] Defendants in the instant case do not characterize plaintiff's anxiety as being the result of an anxiety disorder. The medications he receives, Prozac and Doxepin, are prescribed for depression. ECF No. 12 at Ex. 6, p. 7.

[4] It is unclear from the record whether plaintiff remains in a single cell despite the expiration of the 90 day period.

Plaintiff asserts that defendants have never evaluated him for single cell assignment eligibility despite their representations otherwise in this case and in the prior case. ECF No. 17. The mental health records submitted by defendants note:

> Inmate Germain was transferred to NBCI in 2008 and has had difficulty getting acclimated to general population. He explained that he was both sexually and physically abused by his older sister in Haiti where he lived before coming to America. Eventually he stabbed and killed his sister that he offers as his response to her abuse. At this date there is no verification of this. In 1998 he reports that he severely stabbed his cell mate ("141 times") because he made sexual advances to him. This resulted in a 5 year stay at MCAC where he was singled (sic) celled. Upon his return he was singled (sic) celled at JCI at the direction of Psychology staff. In essence inmate Germain has been single celled for approximately 13 years. We discussed the importance of demonstrating the ability to be double celled and he expressed reluctance. A plan to allow him to have a 90 day adjustment period of single celling in general population was discussed with the intent to select a cell buddy during that period of time. At this time he denied feeling suicidal thus was returned to a disciplinary segregation cell waiting further planning. Further case discussion with the staff will take place tomorrow. He was removed from precautions.

ECF No. 12 at Ex. 6, p. 1.

It appears from the above noted mental health record that one of the treatment goals for plaintiff is to overcome his anxiety by acclimating to general population, choosing a cellmate, and facing his anxiety regarding sharing a cell.[5] While plaintiff would prefer to avoid the situation that causes him anxiety, avoidance will not enable him to function better in the prison environment where he must stay. Additionally, there is no basis for issuing a permanent injunction against placing plaintiff in a cell with another inmate where, as here, there are legitimate differences in opinion on how best to treat plaintiff's anxiety issues. Plaintiff's demand to be placed in a single cell amounts to a difference of opinion over the preferred course

[5] The court notes that in his amended complaint plaintiff credits the kindness of a fellow inmate with helping him to maintain hope during his confinement to the contingency cell. ECF No. 5. Thus, the concept of allowing plaintiff an opportunity to choose a suitable cell mate does not appear unreasonable.

of treatment for his anxiety and thus is not a sufficient basis for a claim of deliberate indifference to a serious medical or psychological need. *See e.g. Jarecke v. Hensley*, 552 F. Supp. 2d 261, 265 (D. Conn. 2008) (dormitory housing assignment); *DeFranco v. Wolfe*, 2008 WL 596735, 12 (W. D. Pa. 2008).

There is no indication that defendants were actually aware that plaintiff had an intention to harm himself after being placed in the contingency cell. Even if plaintiff's assertion that he told Sgt. Smith and Ms. Booth-Moulden that he would kill himself if he was put in an isolation cell is believed, there is no evidence defendants thought he would follow through and was not simply engaging in manipulation. *See* ECF No. 17 at p. 9. To be culpable "the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Had defendants believed plaintiff intended to harm himself, suicide precautions would have required plaintiff's placement in a cell stripped of any items he could use to harm himself, where he would be observed every 15 minutes. *See* ECF No. 12 at Ex. 6, pp. 3 – 5; ECF No. 17 at Ex. 4. In the contingency cell where he was placed, he had bedding available and he was observed every 30 minutes. Medical records indicate that plaintiff used a torn piece of his sheet to tie around his neck, cutting off his airway as a suicide attempt. ECF No. 12 at Ex. 9, p. 1. Had plaintiff's threat of suicide been believed, the conditions of his confinement would not have differed greatly from the conditions in the contingency cell. Thus, there is not a genuine dispute of material fact regarding whether defendants were deliberately indifferent to a serious risk of harm to plaintiff.

Retaliation Claim

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993) "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), *quoting Adams*, 40 F.3d at74. Plaintiff "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996).

Plaintiff points to the timing of his removal from a single cell as evidence that the move was retaliation for his litigation. The fact that the Fourth Circuit Court of Appeals had issued its decision affirming this court's decision one week before the move does not, alone, establish a retaliatory motive. Rather, correctional officials may have waited in order to insure their

decision did not run afoul of plaintiff's rights as determined by the appellate court. Plaintiff does not allege adverse actions were taken against him when he filed the lawsuit, nor does he allege that defendants gave him an indication that the move to a double cell was punishment for his unsuccessful lawsuit.

With respect to plaintiff's claim his placement in the contingency cell was for purposes of punishment, the claim fails. Plaintiff's objection to being put into a cell with another inmate created a logistics problem for correctional staff. In light of his refusal correctional staff placed him in a cell by himself where he could remain until it was decided where his more permanent assignment would be. Plaintiff's assertions that other single cells were available at the time of the incident are inconsequential. Management of a prison, including cell assignments, is a matter best left to the expertise of correctional personnel. It is not the province of this court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995).

<u>Conditions Claim</u>

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a

condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) *citing Wilson*, 501 U.S. at 298-300.

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), *quoting Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir.2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta*, 330 F.3d at 634. Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

Plaintiff alleges that as a result of being confined to the contingency cell he lost 23 pounds, suffered headaches, was bitten by ants, and experienced an increase in symptoms of anxiety. ECF No. 17 at p. 9. He also claims he was deprived of all outgoing or incoming mail.

Plaintiff was confined to the contingency cell from May 31, 2011 to June 9, 2011; the instant complaint was filed on June 8, 2011, and is dated June 6, 2011. ECF No. 1. "Daily Events Log" entries for May 31, 2011 through June 12, 2011, are submitted by defendants, as well as the observation log for plaintiff's stay on suicide observation. ECF No. 12 at Ex. 5 and 6, p. 3 – 5. On June 1, 2011, when plaintiff was confined to the observation cell, it is noted that plaintiff received two bag meals and he was observed eating. *Id*. at Ex. 6, p. 5. There is no indication on the Daily Events Log that plaintiff, or any other inmate in particular, was fed, nor is there an indication that plaintiff was refusing to eat. Plaintiff's claim that he lost 23 pounds in 13 days is simply not supported by objective evidence. The only record submitted by plaintiff to support his claim is a sick call slip he sent in asking if his high calorie diet had been cancelled. ECF No. 17 at Ex. 2. A notation on the same document indicates that plaintiff was in fact placed on a high calorie diet. *Id*. Plaintiff admits that on June 9, 2011, he began receiving his "high calorie bag and regular trays." ECF No. 5 at p. 3. The evidence does not establish that plaintiff was "starved" during the 13 days he was confined to the contingency cell.

Plaintiff's claim that he suffered headaches as a result of the stress induced by his placement in the contingency cell is supported by the record, but it is noted that he has a long history of suffering headaches. Defendants' actions are not actionable unless, "in light of preexisting law the unlawfulness of those action is apparent." *Iko*, 535 F. 3d at 238, *citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "We do not require of such officials the legal knowledge culled by the collective hindsight of skilled lawyers and learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Johnson v. Caudill*, 475 F. 3d 645, 650 (4th Cir. 2007). In the instant case there was no bright line crossed by defendants in placing plaintiff in a contingency

cell after he refused to share a cell with another inmate. The conditions as described by plaintiff were not so severe that defendants could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F. 3d 2929, 313 (4th Cir. 2006). The discomforts experienced by plaintiff in the contingency cell were restrictive and harsh, but did not constitute cruel and unusual punishment. This conclusion is supported by the absence of proof of significant, serious physical or psychological injury resulting from plaintiff's temporary stay in the contingency cell.

**Conclusion**

Based on the undisputed facts and evidence before it, this court concludes that defendants are entitled to summary judgment in their favor. In light of the disposition of the case, plaintiff's pending motion for appointment of counsel shall be denied.[6] A separate order follows.

November 9, 2011
Date

/s/
J. Frederick Motz
United States District Judge

[6] The court notes that the pleadings and motions filed by plaintiff demonstrate that he possesses the ability to articulate the legal and factual basis of his claims, or he has the wherewithal to secure meaningful assistance in doing so. *See* 28 U.S.C. §1915(e)(1); *Cook v. Bounds*, 518 F. 2d 779, 780 (4th Cir. 1975).