# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEAN B. GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-11-1613 |
| BOBBY P. SHEARIN, *et al.* | * | |
| Defendants | * | |

***

## MEMORANDUM

Pending is defendant James Smith's motion for summary judgment (ECF No. 42) which is opposed by plaintiff (ECF No. 48). The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Procedural History

On November 9, 2011, this court granted summary judgment in favor of defendants on all claims, based on evidence supporting the conclusion that plaintiff's assignment to a double cell was part of a treatment plan for his anxiety disorder. This court also found no evidence that plaintiff suffered a serious or significant physical or emotional injury as a result of the alleged conditions of confinement. ECF No. 19.

On November 23, 2011, plaintiff filed a motion to alter or amend pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 21. That motion was denied on February 17, 2012. ECF No. 26. Plaintiff appealed this court's decision. ECF No. 27.

On July 3, 2013, the United States Court of Appeals for the Fourth Circuit affirmed in part and vacated in part, this court's decision. ECF No. 32. The sole issue remanded concerns defendant Smith's alleged deliberate indifference to the danger of plaintiff's attempted suicide prior to his confinement in a contingency cell where he was held pending his agreement to

assignment to a double cell. Id. at pp. 11-12. The Fourth Circuit found that "by submitting admissible evidence that he warned Smith of a serious risk of injury, and that] Smith acted with deliberate indifference to that risk, [plaintiff] has raised a triable issue of fact." *Id.* All other aspects of this court's prior decision were affirmed.

**Defendant Smith's Motion for Summary Judgment**

At all times relevant to this matter, plaintiff was confined to North Branch Correctional Institution (NBCI), where he arrived on October 31, 2008. ECF No. 42 at Ex. 1.On May 31, 2011, plaintiff was released from disciplinary segregation and an attempt was made by NBCI officials to assign him to a double cell in Housing Unit #2. *Id*. at p. 7 and Ex. 2. Plaintiff, however, refused to accept a cellmate and was returned to disciplinary segregation in Housing Unit #!. When plaintiff arrived in Housing Unit 1, he again refused to accept the housing assigned to him, stating to defendant Smith that he is supposed to be single-celled. *Id*. Plaintiff alleges that at this time he also told Smith that he was suicidal.[1] Smith placed plaintiff in a contingency cell[2] in Housing Unit #1 until plaintiff's claim could be investigated. *Id*. At approximately 6:40 p.m., officers discovered plaintiff unresponsive in the contingency cell after an apparent suicide attempt. ECF No. 12 at Ex. 4. Plaintiff was removed to the medical unit where he received treatment. *Id*.

**Plaintiff's Opposition**

Plaintiff states that Smith mischaracterizes his complaint when he asserts that plaintiff alleges he told Smith he was suicidal when he attempted to double cell plaintiff. ECF No. 48 at

---

[1] Plaintiff alleged he told Smith he was suicidal in his opposition response to defendants' motion to dismiss or for summary judgment. ECF No. 17 at Attachment 1, p. 3. Prior to that, plaintiff simply alleged that when Smith learned plaintiff was suicidal he failed to follow directives governing suicide prevention. ECF No. 5 at p. 5.

[2] A contingency cell is a prison cell without bunks where the occupant is provided a mattress and bedding upon being assigned there. ECF No. 42 at Ex. 2. When an inmate is confined to a contingency cell, custody staff are required to inspect the cell twice every hour. *Id*. at Ex. 1, p. 3.

pp. 2 – 3. Plaintiff asserts that in his original opposition response he alleged "plaintiff informed Sgt. Smith that if he were placed in a contingency cell that he would make an attempt to commit suicide Sgt. Smith completely ignored plaintiff's emotional state." *Id*. at p. 3 citing ECF No. 17-1 at pp. 3 – 4. Plaintiff further asserts that it was the threat made by Smith to isolate plaintiff indefinitely that rendered plaintiff suicidal. ECF No. 48 at p. 3. Plaintiff concludes that this constitutes a genuine dispute of material fact precluding summary judgment in Smith's favor. *Id*.

In his declaration under oath plaintiff states that he told Smith the he "had a single cell alert in [his] psychological file from Mrs. Moulden that clearly stated that whenever I was in the disciplinary segregation unit I should be single celled." ECF No. 48 at Attachment 1, p. 3. He further states that Smith informed him he would be placed in an isolation cell where he would remain until he accepted a cellmate. *Id*. He claims the prospect of being confined to an isolation cell until he accepted a cellmate was what triggered his suicidal plans and that he told Smith "if he followed through his threat that [he] would kill [himself]." *Id*. at pp. 3- 4. He claims the isolation cell was inappropriate for his confinement because it did not contain a surveillance camera and he was allowed to keep his clothes as well as bedding which he could use to harm himself. *Id*. at p. 4.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). An Eighth Amendment claim for deprivation of appropriate psychiatric care or failure to protect plaintiff from a known harm, requires demonstration that the actions or failures to act by defendants amounted to deliberate indifference to a serious psychiatric need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The claim requires proof of an objectively serious need as well as proof that defendants were aware of the need, but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Viewing plaintiff's claim in a light most favorable to him as the non-moving party, the court presumes he informed Smith that he was suicidal. The focus then becomes whether Smith's conduct in this case evidences "subjective recklessness" in the face of plaintiff's suicidal threat. *See Farmer*, 511 U.S. at 839 – 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Plaintiff's allegation that Smith has mischaracterized his complaint, as well as the context of his statement regarding suicide, is without support in the record. A review of the allegations against Smith in plaintiff's pleadings reveals a discrepancy in plaintiff's account of the events. First, plaintiff alleges in the complaint that he was placed back into a contingency cell, where he had already tried to kill himself, by Sgt. J. Smith, even after the Chief Psychologist advised against putting him there. ECF No. 1 at p. 2. The complaint is dated June 6, 2011, approximately one week after the suicide attempt that is the subject matter of this case. *Id*. at p.

3. In his first amended complaint, plaintiff does not raise a claim[3] regarding Smith's knowledge of his intent to commit suicide. ECF No. 3 at p. 4. In his second amended complaint, plaintiff asserts[4] that Smith initiated his placement in the isolation cell, "in complete disregard for DCD 110-4 Isolation Cells." ECF No. 5 at p. 2. In plaintiff's response in opposition to defendants' first motion to dismiss or for summary judgment he alleged Smith knew plaintiff was not to be double celled, but kept him in the contingency cell until June 9, 2011; that plaintiff informed Smith he was suicidal but Smith failed to follow suicide precaution regulations; and that Smith's placement of plaintiff in the contingency cell was a violation of DCD 110-4. ECF No. 17-1 at pp. 2 and 4. It is not until plaintiff filed an opposition response to the currently pending motion for summary judgment that he alleges he told Smith he would kill himself if he was placed in the contingency cell because the threat of isolation was what caused plaintiff's suicide attempt. ECF No. 48. Indeed, in all prior accounts of the claim plaintiff tied his suicide attempt to the prospect of being assigned to share a cell with another inmate. Additionally, his claims prior to those asserted in the opposition response also took issue with the deprivation of property in the contingency cell following his suicide attempt. In the context of Smith's dispositive motion plaintiff claims it was unconstitutional to allow him to keep bedding and clothing with him in the contingency cell.

The nature of plaintiff's suicide threat is material to Smith's state of mind. The instant case is the second lawsuit filed by plaintiff wherein he insists he may not be forced to share a cell with another inmate because of an anxiety disorder and that he must be assigned to a cell by

---

[3] The main assertion raised in the first amended complaint was that plaintiff was assigned to disciplinary segregation in retaliation for suing prison staff and for filing administrative remedy complaints. ECF No. 3 at p. 4.

[4] Plaintiff alleges in the second amended complaint that he remained in the isolation cell until June 9, 2011, and that his mental health deteriorated while there. He further claimed that he "would have attempted to harm himself again" if it had not been for the assistance of another inmate who assisted him with contacting both the undersigned and a United States Senator, which helped plaintiff to remain hopeful. ECF No. 5 at p. 4. The main assertion raised in the second amended complaint was that plaintiff's conditions of confinement violated the Eighth Amendment. *Id.*

himself. *See Germain v. Shearin*, Civil Action JFM-09-3097 (D. Md. 2010), affirmed *Germain v. Shearin*, No. 10-7722 (4th Cir. May 23, 2011).[5] Notwithstanding those claims, plaintiff now asks this court to find that Smith should have known that he would harm himself if given the very thing he was insisting that his psychological state required, a single cell, and that it was in fact being isolated, not being in close quarters with another inmate, that would provoke an attempt by plaintiff to kill himself. To do so, however, is to ignore all prior assertions made by plaintiff regarding the nature of his anxiety disorder, *i.e.*, that the anxiety response is triggered by living in close proximity with another inmate. "Beyond [actual] knowledge . . . the officer must also have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs." *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008) quoting *Parrish ex rel. Lee v. Cleveland,* 372 F.3d 294, 303 (4th Cir. 2004). It is clear on the record that Smith did not recognize that plaintiff's suicidal intentions would be exacerbated by his placement in the contingency cell.

Under the circumstances, as established by the record evidence as well as the history of plaintiff's litigation regarding this claim, Smith is also entitled to avail himself of a qualified immunity defense. "[Q]ualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F. 3d 253, 261 (4th Cir. 2002), quoting *Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992). The bright line in the instant case was plaintiff's assignment to a cell

---

[5] In that case, plaintiff claimed he was sexually assaulted by another inmate on August 1, 1998, when he was confined to Jessup Correctional Institution (JCI). He claimed that when the unwanted sexual contact began he stabbed his assailant with a knife 104 times, resulting in his later conviction of attempted second-degree murder and a transfer to Maryland Correctional Adjustment Center. Plaintiff remained there until 2003 when he was returned to JCI and evaluated by the chief psychologist, who recommended assignment to a single cell. The recommendation was approved and plaintiff remained assigned to a single cell until October 30, 2008, when he was transferred to North Branch Correctional Institution (NBCI). *See Germain*, Civil. Action JFM-09-3097 at ECF No. 16.

with another inmate, which Smith did not force on plaintiff. Rather, plaintiff was provided the very thing he insisted he was entitled to: a single cell.

Defendant Smith is entitled to summary judgment in his favor. A separate order follows.

__January 13, 2014__                                                ____/s/_____  
Date                                                                              J. Frederick Motz  
                                                                                  United States District Judge